IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------------  :
MICHAEL L. MCDANIEL                          :
                                                          :  CASE NOS.  1:06 CV 0803
                                     Plaintiff    :                1:06 CV 1371
                                                          :
              -vs-                                    :
                                                          :  JUDGE WELLS
JOHN E. POTTER, Postmaster         :
General, United States Postal Service   :  <u>MEMORANDUM AND ORDER</u>
                                                          :  <u>GRANTING DEFENDANT'S MOTION</u>
                                   Defendant.   :  <u>FOR SUMMARY JUDGMENT AND</u>
                                                          :  <u>DENYING PLAINTIFF'S MOTION FOR</u>
---------------------------------------------------  :  <u>SUMMARY JUDGMENT</u>

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        Appearing <u>pro se</u>, plaintiff Michael L. McDaniel ("Mr. McDaniel") brought before

the Court case number 6 CV 1371 on 5 June 2006, and case number 6 CV 803 on

6 April 2006,[1] against the United States Postal Service, alleging employment

discrimination.  Mr. McDaniel avers defendant Postmaster General John Potter

(hereinafter "USPS") violated Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e <u>et seq</u>, in terminating the plaintiff's employment.  In this now

consolidated case, Mr. McDaniel specifically alleges discrimination because of sex

(male), race (African-American) and, further, contends the postal service engaged in

_____

        [1]  The Court consolidated the two cases under 6 CV 803 (Docket 12).

retaliation due to the plaintiff's prior Equal Employment Opportunity activity.  (Docket 1).

The USPS moves for dismissal of each claim brought by Mr. McDaniel, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment of all claims in the consolidated action, pursuant to Rule 56.  (Docket 13).  In response, Mr. McDaniel filed a "Supplement to Motion for Summary Judgment," which the Court will construe as a Motion for Summary Judgment.  (Docket 16).[2]  In addition, Mr. McDaniel filed an opposition to the USPS's dispositive motion, styled as a "Motion to Strike introduction of exhibits" (Docket 18), and supplemented that opposition six-months later with a "Motion Amendment to dismiss Defendant's Introduction of exhibits alternative motion for summary judgment" (Docket 19).  The Court will treat Mr. McDaniel's "Motion Amendment to dismiss Defendant's Introduction of exhibits alternative motion for summary judgment" (Docket 19) as both untimely and redundant of his earlier filing, and dismiss it accordingly.

For the reasons discussed below, the Court will move beyond the four corners of the complaint and grant the USPS's request for summary judgment in this matter and deny Mr. McDaniel's request for Summary Judgment.[3]

---

[2]This Motion actually supplements Mr. McDaniel's premature Motion for Summary Judgment which the Court has taken into consideration though it determined it untimely in a prior Order.  As an initial matter, the Court denies as untimely, Mr. McDaniel's Motions for Summary Judgment filed in 6 CV 1371 (Docket No. 2) and in 6 CV 803 (Docket No. 6), and his Motion to Deny Defendant's Second Request for an Extension of Time in 6 CV 803 (Docket No. 10).

[3]Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. Davey v. Tomlinson, 627 F.Supp. 1458, 1463 (E.D. Mich. 1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true.  Janan v. Trammell, 785 F.2d 557, 558 (6th Cir. 1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.
    Recently the U.S. Supreme Court revised the pleading requirements under the Federal Rules for Fed.R.Civ.P. 12(b)(6).  See Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (21

## I.      Background

Mr. McDaniel was employed as a tractor trailer operator with the United States Postal Service working out of the Cleveland Processing and Distribution Center. (Complaint I, ¶ 5).  Mr. McDaniel is covered by the collective bargaining agreement between the Postal Service and the American Postal Worker's Union ("APWU").

The allegations raised in this consolidated case arise from several incidents, recounted by Mr. McDaniel in his pro se Complaint to this Court, and articulated in three USPS EEO Complaints filed by the plaintiff.  In the first series of incidents [Complaint I], which became the basis for the plaintiff's internal EEO Complaint of Discrimination in the Postal Service, Agency Case No. 1C-441-0094-05 (filed on 23 August 2005), Mr. McDaniel contends that on 6 August 2005 Acting Manager of Distribution Operations Yvonne Robinson ("Manager Robinson") was: "staring at me as I walked pass [sic] her to begin my tour.  Shortly after I went past her, supervisor Lee Reichbaum called me inside the dispatch office questing [sic] me about my postal uniform shirt that I was wearing.  She later took pictures of my body and showed it to all of her staff.  She also went around making fun of my stomach to all of her staff.  I was later giving [sic] a pre-disciplinary interview by [my supervisor] Lee Reichbaum."  (EEO Complaint, Doc. 13,

---

May 2007).  In Twombly, the Court states: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-1965, citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986).   The complaint must present sufficient "[f]actual allegations ... to raise a right to relief above the speculative level."  Id. at 1965.  To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  While an argument can be propounded, under this new, more rigorous pleading standard, that Mr. McDaniel's complaint fails to "raise a right to relief above the speculative level," the Court, instead reviews this matter as one for Summary Judgment in order to accommodate the evidence submitted outside of the Complaint.

Exhibit 1).  Mr. McDaniel later provided an extended account of this incident in an

undated letter to the National Labor Board preceding the investigation of his complaint.

(Exhibit 3).  Mr. McDaniel asserted he had been discriminated against based on his sex

(male) and prior EEO activity.

The record further indicates, through written interviews and emails, that on

5 August and 6 August 2005, several female employees complained to Managers

Robinson and Maren Kay Lindsey about Mr. McDaniel "exposing his mid-section while

walking through the plant" and repeatedly uttering the phrase "fuck," "mother-fucker,"

and "those mother-fuckers."  (Exhibit 2).  After receiving these complaints, Supervisor

Reichbaum called Mr. McDaniel into his office to discuss appropriate attire and

treatment of his Postal Office uniform.  (Exhibits 3, 4, 5).

Also part of the initial EEO Compliant is Mr. McDaniel's allegation that on

9 August 2005, Manager Robinson attempted to intimidate him by staring at him and

hitting the top of a skid with her hand.  (Exhibit 3).  Further, Mr. McDaniel alleges that on

10 August 2005, Supervisor Reichbaum yelled at him and threatened him during a

safety talk and that, subsequently, he was subjected to a pre-disciplinary interview

(PDI).  (Exhibit 3).

The USPS Office of EEO Compliance and Appeals reviewed the record in

Agency Case No. 1C-441-0094-05 with regard to the three incidents alleged by Mr.

McDaniel and on 7 September 2005 dismissed the complaint for failure to state a claim

in accordance with 29 C.F.R. 1614.107(a)(1).  In finding that Mr. McDaniel was not

denied any entitlement in relation to his term of employment as a result of the alleged

incidents, and was not, therefore, an "aggrieved individual," the Agency relied upon

- 4 -

Harris v. Forklift Systems Inc., 510 U.S. 17, 21 (1993). (Exhibit 6). Mr. McDaniel appealed this finding to the EEOC's Office of Federal Operations. (Complaint I, ¶ 9).

In the second series of incidents [Complaint II], which form the basis for the plaintiff's second USPS EEO Complaint, Case No. 1C-441-0112-05, Mr. McDaniel alleged racial discrimination and retaliation with regard to: [1] receiving a seven-day suspension assigned to begin on 23 October 2005; [2] being placed on emergency off-duty status on 26 September 2006, and then being placed on administrative leave status on 9 October 2005. (Exhibit 7).

The seven-day suspension charged Mr. McDaniel with "improper conduct" in the use of "loud and vulgar language," inappropriate physical exposure, and intimidation. Id. Seven managers and/or supervisors complained, in writing, to Mr. McDaniel's supervisor, Lee Reichbaum, that the plaintiff was creating a "hostile work environment" by walking around the dock area "with a large area of [his] stomach area improperly exposed," talking loudly and using phrases like "fuck," "Mother-Fucker," and "Those Mother-Fuckers." One supervisor conveyed that she felt as though Mr. McDaniel was trying to "intimidate her by standing in her view for approximately 30 minutes looking at her" while exposing his "naked belly." The suspension also charged the plaintiff with failure to follow instructions when he was ordered by Mr. Reichbaum to listen to a safety talk in the supervisor's office that he had missed earlier in the day. Id. An investigative interview took place with Mr. McDaniel prior to notice of the seven-day suspension. Mr. McDaniel filed his USPS EEO Complaint on 23 September 2005, the same day he received his formal notice of a seven-day suspension, and followed on 27 September 2005 with a narrative explanation of his complaint. (Exhibit 8).

- 5 -

The plaintiff formalized the second USPS EEO Complaint, Agency No. 1C-441-0112-05, on 19 October 2005.  (Exhibit 9).  Included in the formal USPS EEO Complaint is a recounting of the 26 September 2005 incident in which Mr. McDaniel allegedly assaulted and then threatened Supervisor Reichbaum.  (Exhibit 9, McDaniel letter to Manager of EEO Compliance; Exhibit 10, Incident Report; Exhibit 11, Letter from Manager Chowki Nesser).  Mr. McDaniel purportedly poked Mr. Reichbaum in the stomach and said, "you keep fucking with me, we're going to settle this outside sometime."  (Exhibits 10, 14).  Mr. McDaniel admits that Supervisor Reichbaum asked whether the plaintiff was threatening him, but denies that he poked his supervisor specifically in the stomach.[4]

---

[4]In his formal Complaint, Mr. McDaniel relayed that when he reported to work on 26 September 2005 he entered the dispatch office and asked his supervisor, Mr. Reichbaum where his run schedule was located.  Mr. McDaniel indicated that Mr. Reichbaum told him the run schedule was on his desk because he wanted to look at it.  Mr. McDaniel contends he then asked Mr. Reichbaum why he continued to harrass him, at which point Mr. Reichbaum started yelling at Mr. McDaniel and threatened him.  Mr. McDaniel then related that he walked out of the office.  (McDaniel Complaint).

Mr. Reichbaum relates that when Mr. McDaniel came into the dispatch office and asked where his run schedule was located, Mr. Reichbaum responded that he had brought it to his office so that he could go over it.  Mr. Reichbaum contends that Mr. McDaniel told him to leave his run alone.  The plaintiff then told another driver, then in the office, to leave because he had something he wanted to say to Mr. Reichbaum, whereupon, he turned to Mr. Reichbaum and said "you better quit fucking with me."  The Supervisor then recounts that he ordered Mr. McDaniel out of the office, at which point the plaintiff rushed up to him, poked his finger in his stomach and said, "keep fucking with me and I'm going to meet you outside."  Mr. Reichbaum also related that when he threatened to call the Postal Police if the plaintiff didn't leave the office Mr. McDaniel responded that he didn't care "what the fuck you do."  (Affidavit A).

In a contemporaneous Incident Report, Manager Chowki Nesser related that Mr. Reichbaum came to speak with her and Manager Sabrina King immediately after the incident, that he appeared "quivering and somewhat shaky," and that he stated "this was the first time that he had been threatened by [Mr. McDaniel]."  She further recounted that she immediately sought out and spoke separately with Mr. McDaniel, that he was "hesitant" to speak with her, "awkward and uneasy," and that he simply responded, "I don't know what you're talking about."  (Exhibit 11).

Finally, the Court notes that the third person in the room, another driver, confirms he was in the room with Mr. Reichbaum and Mr. McDaniel and was asked to leave by Mr. McDaniel.  Mr. McDaniel's account does not include this third party witness, nor does he recount having a conversation with Manager Nesser immediately following the incident.

In a summary judgment motion, the Court's function is to determine whether there exists a genuine issue of material fact for trial.  The Courts are directed that a trial is not necessary, and a

In her letter memorializing the incident, Supervisor Reichbaum's superior, Manager Chowki Nesser, indicated she discussed the incident with Mr. McDaniel and decided to place him on emergency off-duty status for the 26 September 2005 alleged assault and verbal threats against Supervisor Reichbaum.  (Exhibit 11).  The suspension was immediate, and superceded the planned seven-day suspension scheduled for 23 October 2005.  Mr. McDaniel was required to surrender his badge to his supervisor.

On 30 September 2005 Mr. McDaniel was informed by letter that an investigation of his actions was being completed and that he would remain in an off-duty status without pay until advised otherwise.  (Exhibit 12).  On 3 October 2005 Mr. McDaniel was notified by letter that he would be removed from off-duty status effective 9 October 2005 and placed on administrative leave status.  (Exhibit 13, Notice of Final Agency Decision, Agency Case No. 1C-441-0112-05).

Sandra Mitchell, Manager of USPS EEO Compliance and Appeals, rendered a Final Agency Decision on Mr. McDaniel's second USPS EEO Complaint, Agency Case No. 1C-441-0112-05.  The agency denied Mr. McDaniel's charges of racial discrimination and retaliation in relation to the seven-day suspension he received on 23 September 2005,  and with regard to the 26 September 2005 decision to place the

_____

case may be concluded as a matter of law on summary judgment where there is an absence of "sufficient evidence favoring the nonmoving party for a jury to return a verdict for [that] party."  Anderson, 477 U.S. at 249.  Furthermore, a scintilla of evidence in favor of the nonmoving party is not sufficient.  Id. at 252.
     The plaintiff must present evidence sufficient to show that a genuine issue of material fact exists and that he could succeed on the merits of his claims based on the evidence presented.  See Anderson, 477 U.S. at 252.  The plaintiff is not entitled to a trial solely on the basis of his allegations.  Gregg v. Allen-Bradley Co., 801 F.2d 859, 861 (6th Cir.1986).  To put it even more bluntly, at the summary judgment stage, the movant challenges the opposing party to "put up or shut up on a critical issue."  Street v. J.C. Bradford & Co., 886 F.2d 1472,1478 (6th Cir. 1989).

plaintiff on emergency off-duty status.  (Exhibit 13, Notice of Final Agency Decision).

The Agency found Mr. McDaniel failed to establish a prima facie case of racial

discrimination as a matter of law in either incident, even assuming he was subjected to

an adverse action, because he did not establish that similarly situated employees,

outside of the protected class, were treated more favorably.  (Exhibit 13, pp. 3-4).

        The Agency decision also found Mr. McDaniel's retaliation claim with regard to

the two incidents – the seven-day suspension and the placement on administrative

leave –  failed as a matter of law.  While the Agency found Mr. McDaniel had "arguably"

established a prima facie case of retaliation it concluded the USPS had articulated

legitimate nondiscriminatory reasons for its actions "which cannot be shown to be

pretext for unlawful discrimination based upon either race or retaliation."  (Exhibit 13, pp.

4).  The Agency reviewed the record and found suspension a legitimate and

nondiscriminatory response to Mr. McDaniel's conduct in which he violated the zero

tolerance policy regarding violence in the workplace, Section 664.24 of the Employee

and Labor Relations Manual, which prohibits violent or threatening behavior in the

workplace, and Section 931.26 of the Employee and Labor Relations Manual, which

requires employees to be adequately and properly dressed for duty.

        Finally, in the third series of incidents [Complaint III], which form the basis for Mr.

McDaniel's third USPS EEO Complaint, Case No. 1C-441-0018-06, the plaintiff alleges

retaliation and discrimination in his 13 January 2006 removal from the U.S. Postal

Service.[5]  Recounting the 26 September 2005 alleged incident between Supervisor Lee

_____

        [5]Mr. McDaniel's second filed claim in this Court, Case No. 1:06 CV 1371, arises out of
Agency Case No. 1C-441-0018-06.  That later claim has now been consolidated and bears
allegations of retaliation, duplicative of the plaintiff's first-filed case, 6 CV 803, in which he levels

Reichbaum and Mr. McDaniel, the USPS, through Supervisor Maren Lindsey and Theresa Pennington, sent a Notice of Proposed Removal to the plaintiff on 1 December 2005.  (Exhibit 14).  Following a Postal Service investigation, Mr. McDaniel was provided a copy of the investigative report.  After receiving a written response from Mr. McDaniel, and concluding the evidence supported his removal for violating Section 665 of the Employee and Labor Relations Manual and its "zero tolerance" policy on workplace violence, Manager Joyce Shepherd sent the plaintiff a Decision Letter on 5 January 2006 informing the plaintiff that he would be effectively removed from employment with the Postal Service on 13 January 2006.  (Exhibit 15).

On 9 May 2006, Sandra Mitchell, Manager, USPS EEO Compliance & Appeals released a Notice of Final Agency Decision – Mixed Case in Mr. McDaniel's grievance, Agency Case No. 1C-441-0018-06.  (Exhibit 16).  In his grievance, Mr. McDaniel maintained his termination was the result of retaliatory animus and racial discrimination in violation of Title VII.  (Exhibit 17).


**II.**      **Summary Judgment Standard**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

---

claims of racial discrimination and retaliation for his termination.  (6 CV 1371, Complaint ¶ 23).

depositions, answers to interrogatories, and admissions on file, together
with the affidavits, if any," which it believes demonstrate the absence of a
genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving

party has the "burden of showing that the pleadings, depositions, answers to

interrogatories, admissions and affidavits in the record, construed favorably to the

nonmoving party, do not raise a genuine issue of material fact for trial") (quoting

Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting

Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the

nonmoving party must present evidence that creates a genuine issue of material fact

making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant,

Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex

stand for the proposition that a party may move for summary judgment by

demonstrating that the opposing party will not be able to produce sufficient evidence at

trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary

judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is

not sufficient to "simply show that there is some metaphysical doubt as to the material

facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986);

see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th

Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of

evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  The nonmovant must " 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.' " Id. (quoting in part Anderson, 477 U.S. at 257); see Adams v. Metiva, 31 F.3d 375, 379 (6th Cir.1994). The nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment."  Moore v. Philip Morris Co., 8 F.3d 335, 339-40 (6th Cir. 1993).  Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. See Anderson, 477 U.S. at 248.  If the nonmovant fails to present such affirmative evidence, then there is no need for a trial since there are no "genuine factual issues that properly can be resolved only by a finder of fact."  Anderson, 477 U.S. at 247-48; see Celotex, 477 U.S. at 322-23.

Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

- 11 -

**III.    Law and Argument**

**A.    Complaint I – Claims of racial and sexual discrimination and retaliation bearing on the incidents occurring on 6, 9 & 10 August 2005 fail as a matter of law.**

Mr. McDaniel first charges the USPS with discrimination based on sex (male) and retaliation for prior EEO activity.  That charge arises from the alleged incidents, detailed in Agency Case No. 1C-441-0094-05 and occurring on 6 August 2005, in which Mr. McDaniel was questioned by his supervisor, Lee Reichbaum, about his postal uniform shirt.  Mr. McDaniel maintains Manager Robinson tried to intimidate him by staring at him and by hitting the top of a "skid" with her hand.  The plaintiff further avers that Mr. Reichbaum threatened him with regard to a safety talk and gave him a pre-disciplinary interview.  (Complaint I, ¶¶ 7-19; McDaniel's Statement to the National Labor Board, Ex. 3).

**1.    Discrimination Claims.**

To succeed in his sex discrimination claim, Mr. McDaniel must navigate the familiar McDonnell Douglas burden-shifting test.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001).  First, Mr. McDaniel has the burden to establish a prima facie case of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. at 802.  Second, if Mr. McDaniel makes such a prima facie showing of discrimination, the USPS then has the burden "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  See id. at 802, 93 S.Ct. 1817; Braithwaite, 258 F.3d at 493.

- 12 -

Finally, if the USPS successfully articulates a legitimate, nondiscriminatory reason for the adverse employment action, Mr. McDaniel has the burden to show that the USPS's reason for the adverse employment action is pretext for what is, in essence, unlawful discrimination.  See McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817; Braithwaite, 258 F.3d at 493.  Mr. McDaniel "can demonstrate pretext by showing that the [USPS's] proffered reason (1) has no basis in fact, (2) did not actually motivate the [USPS's] challenged conduct, or (3) was insufficient to warrant the challenged conduct." Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).  The Sixth Circuit has adopted an approach that for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made."  Smith v. Chrysler Corp., 155 F.3d 799, 806-07 (6th Cir. 1998). Pursuant to Smith, the "key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  Id. at 807.

To demonstrate a prima facie case, Mr. McDaniel must show that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. DiCarlo, 358 F.3d at 415.  With regard to his sex-discrimination claim, Mr. McDaniel has established the first and third elements of the prima facie case – that he is member of a protected class and that he was qualified for the position – but he has failed to establish the second and fourth element.  See DiCarlo, 358 F.3d at 415.  Mr. McDaniel did not

suffer a materially adverse employment action as a result of his gender and he has not

shown that he "was treated differently than similarly-situated non-protected employees."

See id.

The Court finds the USPS's action involving a pre-disciplinary interview regarding

Mr. McDaniel's behavior and reported failure to attend the required safety meeting was

not a materially adverse change in the terms or conditions of his employment and,

accordingly, did not rise to the level of an adverse employment action.  See Mitchell v.

Vanderbilt University, 389 F.3d 177, 182-83 (6th Cir. 2004); Policastro v. Northwest

Airlines, Inc., 297 F. 3d 535, 539, n. 1 (6th Cir. 2002).

Further, Mr. McDaniel has failed to present evidence that he was treated less

favorably than any similarly-situated female employee.  "The plaintiff need not

demonstrate an exact correlation with the employee receiving more favorable treatment

in order for the two to be considered 'similarly-situated.' "  Ercegovich v. Goodyear Tire

& Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (considering claim under the Age

Discrimination in Employment Act).[6]

---

[6]As the United States Supreme Court held in the context of a claim of race-based peremptory strikes of jurors, "a rule that no comparison [among prospective jurors] is probative unless the situation of the individuals compared is identical in all respects" would make claims of discrimination "inoperable," because "potential jurors are not products of a set of cookie cutters." Miller-El v. Dretke, 545 U.S. 231, 247 n. 6, 125 S.Ct. 2317, 2329 n. 6, 162 L.Ed.2d 196 (2005).  This reasoning applies with equal force to the employment-discrimination context.  Therefore, to establish that an employee is an appropriate comparator, "the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in all relevant respects."  Ercegovich, 154 F.3d at 353.

In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, the plaintiff and his or her proposed comparator must have engaged in acts of "comparable seriousness."  Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002) (applying the Ercegovich approach to a Title VII claim) (quoting McDonald v. Santa Fe Transp. Co., 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)).  To make this assessment, courts look to certain factors, such as whether the individuals "'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"

Taking all of his allegations as true, the Court concludes that Mr. McDaniel has failed to make out a prima facie case of sex discrimination because he has not shown that he was treated differently from any other similarly situated employee as Mr. McDaniel has provided no comparable employee in his sex and race discrimination claims.

In addition, the Court finds that even if Mr. McDaniel had made out a prima facie case of discrimination, he failed to produce any evidence that the USPS's reasons for addressing the plaintiff's uniform infractions, offending language, and failure to follow a supervisor's orders to attend a safety meeting were pretextual.  The USPS has offered evidence that it "reasonably relied on the particularized facts then before it."  Smith, 155 F.3d at 807.  The facts before the USPS were: Mr. McDaniel's uniform and behavior issues, incident reports from co-workers, and incident reports from supervisors.  Upon investigation, the USPS concluded that Mr. McDaniel's loud use of offending language and improper, continued exposure of his stomach were verified by several witnesses. Further, Mr. McDaniel's complaint that he was "stared at" by Manager Robinson and later questioned by Supervisor Reichbaum regarding his improper dress, proves inconsistent with the plaintiff's later assertions that his stomach was covered.  Finally, Mr. McDaniel admits he ignored Supervisor Reichbaum's order that he listen to a mandatory safety talk, admittedly telling his supervisor instead "to get out of his face."

_____

Ercegovich, 154 F.3d at 352 (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). However, when such factors are not relevant, the Court need not consider them.  Id.  To determine whether two individuals are similarly situated with regard to discipline, the Court will "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the [proposed comparable] employee."  Id.

Accordingly the Court finds the USPS has proffered legitimate reasons for the pre-disciplinary interview.

Finally, Mr. McDaniel has offered no evidence to indicate the USPS made its decision on grounds other than those offered.  Mr. McDaniel's unsupported contentions do not create a question of fact regarding the USPS's assertion that it disciplined the plaintiff for nondiscriminatory reasons supported by particularized facts after a reasonably thorough investigation.  In this instance, Mr. McDaniel, even if he had been able to establish the elements of a prima facie case for race and sex discrimination, has not met his burden of proving pretext.

Accordingly, with regard to Mr. McDaniel's claims of racial and sexual discrimination as they relate to the specific events on 6, 9 & 10 August 2005 the Court will grant the USPS's motion for summary judgment.

### 2.      Retaliation Claim.

"In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the McDonnell Douglas framework."  Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003) (referring to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).  Absent direct evidence of retaliation, as is the case here, retaliation claims are subject to the same McDonnell Douglas burden-shifting framework as discrimination claims.  Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563-64 (6th Cir. 2004).

To establish a prima facie case of retaliation under Title VII, Mr. McDaniel must show that "(1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to [the USPS]; (3) [the USPS] thereafter took adverse employment action against [Mr. McDaniel]; and (4) there was a causal connection between the protected activity and the adverse employment action."  Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 736 (6th Cir. 2006); Ford v. General Motors Corp., 305 F.3d 545, 552-53 (6th Cir. 2002).

### a.    Adverse Action

The third requirement for a prima facie case of retaliation is that the employer subjected the employee to severe retaliatory action. The retaliatory action need not specifically affect the plaintiff's employment.  In Burlington Northern & Santa Fe Railway Co. v. White, --- U.S. ----, 126 S.Ct. 2405, 2414-16, 165 L.Ed.2d 345 (2006), the United States Supreme Court recognized that the standard for establishing an adverse employment action in a retaliation claim is not as high as the standard for establishing the adverse action in a discrimination claim under Title VII.  The U.S. Supreme Court held that, to prove retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' "  Id. at 2415 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

In Burlington, the U.S. Supreme Court stated that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his [or her]

employment or by causing him [or her] harm outside the workplace." Id. at 2412.  The

U.S. Court held that in order to prove retaliation, a plaintiff must show that "a reasonable

employee would have found the challenged action materially adverse 'which in this

context means it well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination.' "  Id. at 2415 (quoting Ronchon, 438 F.3d at

1219).  The U.S. Supreme Court went on to state that "reassignment of job duties is not

automatically actionable" and that a trier of fact must look at the circumstances of a

particular case and judge the case from the viewpoint of a reasonable person in the

place of the plaintiff.  Id. at 2417 (citing Oncale v. Sundowner Offshore Servs., Inc., 532

U.S. 75, 81 (1998)).

     In Burlington, the plaintiff, who was a forklift operator, was transferred to a

position that was widely known to be a much harder and much dirtier position after she

complained that her supervisor had sexually harassed her.  Id. at 2406.  Later, after the

plaintiff complained about her transfer, she was suspended for thirty-seven days without

pay for insubordination.  While the plaintiff was eventually given back pay for this

suspension, the United States Supreme Court noted the plaintiff and her family were

forced to live without an income for thirty-seven days.  Id.  Because of the obviously

downgraded conditions of the plaintiff's job as well as the thirty-seven day suspension,

the U.S. Supreme Court found that a reasonable juror could have found that the

defendant's actions against the plaintiff were materially adverse.  Id. at 2417.

     In the situation at hand, Mr. McDaniel did not experience an adverse action of the

type examined in Burlington.  With guidance from the United States Supreme Court, this

Court finds that the pre-disciplinary interview applied by the USPS after co-workers

- 18 -

complained about Mr. McDaniel's attire and loud, offending language, and after Mr.

McDaniel's documented workplace insubordination in response to a reasonable request

from his supervisor, does not rise to the level of a materially adverse action. As such,

Mr. McDaniel's claim of retaliation in this instance fails to muster a <u>prima facie</u> level of

proof.

Accordingly, this Court will grant the USPS's motion for summary judgment on

Mr. McDaniel's claim of retaliation for the actions occurring on 6, 9 & 10 August 2005.


**B.      Hostile Work Environment Claim Fails as a matter of law.**


To establish a prima facie case of hostile work environment based on race under

Title VII, a plaintiff must show: 1) he is a member of a protected class; 2) he was

subjected to unwelcome racial harassment; 3) the harassment was based on race; 4)

the harassment had the effect of unreasonably interfering with his work performance by

creating an intimidating, hostile, or offensive work environment; and 5) employer liability

existed.  <u>Hafford v. Seidner</u>, 183 F.3d 506, 512 (6th Cir. 1999).

Courts recognize that under Title VII, a hostile work environment occurs when an

individual's workplace is "permeated with discriminatory intimidation, ridicule, and insult

that is sufficiently severe or pervasive to alter the conditions of the victim's working

environment."  <u>Harris v. Forklift Sys</u>., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295

(1993).  In order to prevail on a Title VII hostile work environment claim, a plaintiff must

prove that the defendant's conduct was objectively severe or pervasive enough to

create a work environment that any reasonable person would find hostile or abusive,

and the victim must subjectively regard the environment as abusive.  Id. at 21-22;

Adams v. Tennessee Dept. Of Finance and Admin., 179 Fed. Appx. 266, 274 (6th Cir.

2006).

Whether an environment is hostile or abusive can be determined only by looking

at all the circumstances, including the frequency of the discriminatory conduct, its

severity, whether it is physically threatening, or a mere offensive utterance, and whether

it unreasonably interferes with an employee's work performance.  Id.  Isolated incidents,

unless extremely serious, are not sufficient to support a hostile work environment claim.

Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000).

As the United States Supreme Court has observed, Title VII is not a "general

civility code."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  "Of

paramount importance, the court must 'distinguish between harassment and

discriminatory harassment,' because it is the latter that is requisite to a Title VII hostile

work environment cause of action."  Morris, 201 at 790.  (Citing Bowman v. Shawnee

State Univ., 220 F.3d 456, 464 (6th Cir. 2000)).  In other words, Title VII does not

prohibit all verbal or physical harassment in the workplace; it is directed only at

harassment that occurs because of the protected class of the plaintiff.  Bowman, 220

F.3d at 463-64.

In this instance, the Court finds no evidence of actionable harassment.  As such,

the USPS is entitled to summary judgment with respect to Mr. McDaniel's hostile work

environment claim.  The complained of conduct is not severe and pervasive as a matter

of law but, rather, reflects employees' and an employer's legitimate concern with Mr.

McDaniel's appearance and behavior in the workplace.

- 20 -

Accordingly, the Court will grant the USPS's motion for summary judgment as it pertains to Mr. McDaniel's claim of hostile work environment.


**C.    Complaint II – Claims of Race Discrimination and Retaliation as they Pertain to the Plaintiff's Suspension, Emergency Status, and Administrative Leave Fail as a Matter of Law.**

Mr. McDaniel's second claim, originating as USPS EEO Complaint Case No. 1C-441-0112-05, asserts race discrimination and retaliation against the plaintiff's prior activity in the USPS's imposition of a seven-day suspension on 23 September 2005, an emergency placement of the plaintiff into "off-duty" status on 25 September 2005, and the enforcement of administrative leave effective 9 October 2005.


**1.    Race Discrimination**

To succeed in his race discrimination claim, here, as in his previously discussed sex discrimination claim, Mr. McDaniel must navigate the McDonnell Douglas burden-shifting test.  First, Mr. McDaniel has the burden to establish a prima facie case of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. at 802.  Second, if Mr. McDaniel makes such a prima facie showing of discrimination, the USPS then has the burden "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  See id. at 802, 93 S.Ct. 1817; Braithwaite, 258 F.3d at 493.

To demonstrate a prima facie case, Mr. McDaniel must show that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected

class or was treated differently than similarly-situated, non-protected employees. DiCarlo, 358 F.3d at 415.

In this instance, Mr. McDaniel has demonstrated that he is a member of a protected class and that he was qualified for the position. Additionally, while this is a closer question because the plaintiff's administrative leave was with pay, the Court finds that Mr. McDaniel did suffer an adverse employment action when he received notice of a seven-day suspension and when he was later placed in an emergency off-duty status.[7]

Nevertheless, Mr. McDaniel has failed to identify, for necessary comparative purposes, an employee outside of his protected class who was similarly situated to the plaintiff and treated more favorably. Mr. McDaniel has produced no evidence that other similarly-situated employees, outside of the protected class, were treated differently.[8]

Even if Mr. McDaniel had met his prima facie burden, the USPS articulated legitimate, non-discriminatory reasons for the notice of seven-day suspension and for placing Mr. McDaniel on emergency "off-duty" status and administrative leave.

---

[7]Mr. McDaniel never actually received the seven-day suspension slated to begin in October because he was placed on emergency "off-duty" status on 26 September 2005, which was changed to an administrative leave effective 9 October 2005. The record does not indicate whether Mr. McDaniel received pay while in "off-duty" status. If that status did, indeed, include pay then Mr. McDaniel would be unable to assert the third element of his prima facie case that he had suffered a materially adverse employment action. As this is unclear, the Court has conditionally determined that Mr. McDaniel did not receive pay during that brief period and may be able to reasonably assert an adverse employment action.

[8]To be similarly situated, the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in "all of the relevant aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). The comparable employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. Ercegovich, 154 F.3d at 352.

- 22 -

McDonnell Douglas v. Green, 411 U.S. at 802-03; see also Lautermilch v. Findlay City Sch., 314 F.3d 271, 275-76 (6th Cir.), cert. denied, 540 U.S. 813 (2003); Diehl v. Tele-Solutions, Inc., 57 F.3d 482, 483 (6th Cir. 1995). Specifically, the USPS points to Mr. McDaniel's improper conduct and failure to follow orders (Exhibit 13) in its decision to place the plaintiff on a seven-day suspension. That decision followed an investigatory interview with Mr. McDaniel and the record reveals input from several managers, supervisors and co-workers with regard to the improper conduct charge. Further, Mr. McDaniel admits that he ignored Mr. Reichbaum's order to attend a mandatory safety talk.

The USPS specifically placed Mr. McDaniel on emergency "off-duty" status and administrative leave after the 26 September 2005 exchange between the plaintiff and his supervisor, Mr. Reichbaum. The USPS received a contemporaneous report of the incident from Mr. Reichbaum and Manager Nesser. In addition, Manager Nesser investigated the matter by speaking directly with Mr. McDaniel after the incident, where Mr. McDaniel appeared reluctant to speak of the encounter and provided evasive responses. USPS determined Mr. McDaniel presented a danger in the workplace therefore he was required to leave the site. The Court finds the USPS has provided legitimate non-discriminatory reasons for these actions. See Duggan v. Orthopaedic Inst. of Ohio, Inc., 365 F.Supp. 2d 853, 861 (N.D. Ohio 2005) ("The determination of whether an employer reasonably relied on the facts before it does not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action").

The burden then shifted to Mr. McDaniel to show that the USPS's articulated reasons for removal were a pretext for discrimination.  See Allen v. Michigan Dep't of Corrections, 165 F.3d at 409; see also Johnson v. O'Neill, No. 04-3550, 2005 WL 1027554, at *6 (6th Cir. May 3, 2005).  Mr. McDaniel has not presented evidence from which the Court could reasonably conclude that the USPS's articulated basis for suspending him could be considered a pretext for unlawful racial discrimination in violation of Title VII.  See McDonell Douglas, 411 U.S. at 802-03; Allen, 165 F.3d at 409.  Accordingly, the USPS is entitled to summary judgment in its favor on Mr. McDaniel's instant claim of race discrimination as it pertains to his seven-day suspension, emergency "off-duty" status, and administrative leave.

### 2.      Retaliation

Mr. McDaniel further maintains that his suspension and leave status were predicated on a retaliatory animus by the USPS for his past EEO activity.

To establish a prima facie case of retaliation under Title VII, Mr. McDaniel must show that "(1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to [the USPS]; (3) [the USPS] thereafter took adverse employment action against [Mr. McDaniel]; and (4) there was a causal connection between the protected activity and the adverse employment action."  Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 736 (6th Cir. 2006); Ford v. General Motors Corp., 305 F.3d 545, 552-53 (6th Cir. 2002).

The law of the Sixth Circuit with respect to the third element of the prima facie case in retaliation actions has changed recently in the wake of the United States

Supreme Court's decision in <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, ---
U.S. ----, 126 S.Ct. 2405,165 L.Ed.2d 345 (2006). The U.S. Supreme Court in <u>Burlington</u>
addressed whether the alleged retaliation must be employment – or workplace – related
and how harmful that action must be to constitute retaliation.  The U.S. Supreme Court
held that in order to prove retaliation, a plaintiff must show that "a reasonable employee
would have found the challenged action materially adverse 'which in this context means
it well might have dissuaded a reasonable worker from making or supporting a charge
of discrimination.' " <u>Id</u>. at 2415 (quoting <u>Ronchon</u>, 438 F.3d at 1219)

In this case, the plaintiff alleges that he was subjected to "retaliatory action"
consisting of a seven-day suspension followed by placement on emergency leave which
was, in turn, followed by placement on administrative leave.  Conceding that Mr.
McDaniel was subject to an adverse employment action under the expansive terms
rendered in <u>Burlington</u>, the plaintiff, nevertheless, fails to show the necessary causal
connection, the fourth <u>prima facie</u> element, between the protected activity and the
adverse action taken by the USPS.

In order to show a causal connection, a plaintiff must show "a temporal
connection coupled with other indicia of retaliatory conduct." <u>Little v. BP Exploration &
Oil Co.</u>, 265 F.3d 357, 364 (6th Cir. 2001).  In this instance, Mr. McDaniel can show that
there is a temporal connection between his complaint or grievance about the pre-
disciplinary interview regarding his uniform, language and insubordination and the
USPS's actions precipitated by the seven-day suspension and concluding with the
placement on administrative leave.  What Mr. McDaniel has failed to show, however, is
that there were other indicia of retaliatory conduct on the part of the USPS.

- 25 -

The suspension, off-duty status, and leave at issue in this instance, which took place within two months of Mr. McDaniel's complaint about the pre-disciplinary interview, satisfy the temporal requirement.  See Harrison v. Metro Gov't of Nashville & Davidson County, Tenn., 80 F.3d 1107, 1119 (6th Cir. 1996).  As stated in Little, however, there must be other evidence of retaliatory conduct, along with the temporal connection, in order to satisfy the causal connection requirement of a prima facie case of retaliation.  Little, 265 F.3d at 364.  In Little, Little's co-workers testified that they were asked to make false claims of theft and harassment against Little or they would lose their jobs.  Id. at 365.  Little was also disciplined for being out of uniform when his co-workers, who were also technically in violation of the uniform requirement, were not punished.  Id.  In Harrison, the Sixth Circuit found that three of Harrison's co-workers feared retaliation because they had testified at Mr. Harrison's EEOC hearing and that one of Mr. Harrison's supervisors made repeated comments about wanting to run people out of his department.  Harrison, 80 F.3d at 1119.  This behavior, coupled with the temporal proximity of Harrison's complaint to the EEOC and his suspension from his job satisfied the causal connection.  Id.

In Mr. McDaniel's case, while the temporal requirement is satisfied, there are no indicia of discrimination that would satisfy the second requirement of the causal connection element.  There is no evidence presented to the Court that any of Mr. McDaniel's co-workers conducted themselves similarly with regard to their uniforms, their language, and their ability to follow supervisory orders, and were not suspended.  Additionally, while Mr. McDaniel's claims in his submissions to the Court that there was a conspiracy to have him removed from the postal service and he further claims that Mr.

- 26 -

Reichbaum and Ms. Robinson were "harassing, threaten [sic], Intimidating, Humiliating, Discriminating, Goading [him] into a verbal altercation" there is no evidence outside of these broadly construed, and plainly self-serving, submissions to support Mr. McDaniel's statements. There are, however, legitimate reasons for the USPS's actions which contradict any discriminatory intent on the part of the defendant. This being the case, this Court is not required to "accept unsupported, self-serving testimony as evidence sufficient to create a jury question." Brooks v. Am. Broad., Inc., 999 F.2d 167, 172 (6th Cir. 1993).

Even if the Court could make a finding that Mr. McDaniel had established a prima facie case of retaliation, further analysis would be required. As with a claim of discrimination, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse action." Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 (6th Cir. 2003). The USPS met this burden by establishing that Mr. McDaniel was given notice of a seven-day suspension due to his improper conduct and failure to follow orders. Further, the USPS articulated a legitimate, non-discriminatory reason for placing Mr. McDaniel on emergency "off duty" status and administrative leave due to his aggressive and physically threatening behavior toward Mr. Reichbaum. The USPS acted on the zero-tolerance policy regarding violence in the workplace and Section 665.24 of the Employee and Labor Relations Manual which prohibits threatening behavior in the workplace. During the investigation of these encounters, Mr. McDaniel has admitted that he ignored Mr. Reichbaum's order that he attend a required safety talk and further admits that his supervisor thought the plaintiff was threatening him.

The burden would then shift back to Mr. McDaniel, requiring him to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for a retaliatory animus.  He "must introduce admissible evidence to show 'that the proffered reason was not the true reason for the employment decision' and that [retaliation] was the true motivation driving the employer's determination."  Barnes v. United Parcel Serv., 366 F. Supp.2d 612, 616 (W.D. Tenn. 2005) (citing Hicks, 509 U.S. at 508, 113 S.Ct. 2742, 125 L.Ed.2d 407).  Pretext may be shown by evidence that the defendant's stated reason had no basis in fact, did not actually motivate the decision or was not sufficient to motivate the employer's action.  See Manzer v. Diamond Shamrock Chem. Co. 29 F.3d 1078, 1084 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied (22 September 1994).  "[E]stablishing that the employer's reason was a pretext requires that a plaintiff do more than simply impugn the legitimacy of the asserted justification; in addition, the plaintiff must also adduce evidence of the employer's [retaliatory] animus."  Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 804 (6th Cir. 1994).  As the U.S. Supreme Court observed in Hicks, "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct."  Hicks, 509 U.S. at 523-24, 113 S.Ct. at 2756.  That is, "it is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).[9]

_____

[9]Reeves involved a motion for judgment as a matter of law made during the course of a trial under Fed.R.Civ.P. 50 rather than a pretrial summary judgment under Fed.R.Civ.P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the court, having already heard the evidence admitted in the trial, views the entire record, Reeves, 530 U.S. at 150.

The Court has already determined, in conjunction with the plaintiff's discrimination claim with regard to this series of incidents, that  there was insufficient evidence to establish pretext.  Mr. McDaniel presented no additional evidence to indicate that the USPS was engaging in pretext in terms of his retaliation claim.  It follows that summary judgment was proper on the latter, retaliation claim, as well as the former discrimination claim involving Mr. McDaniel's seven-day suspension, his placement on emergency "off-duty" status and, subsequently, on administrative leave.

**D.      Breach of Contract Claim – Construed as a Claim Under 39 U.S.C. § 1208(b) Fails as a Matter of Law.**

Mr. McDaniel maintains the USPS failed to adhere to the terms of the labor contract between the USPS and the American Postal Workers Union ("APWU") when the postal service allegedly violated a settlement agreement reached in the contractual grievance procedure.  (Complaint ¶¶ 10, 12).  The Complaint further argues that Mr. McDaniel's supervisor failed to meet with the union and failed to discuss the issues related to the seven-day suspension.  Id.  Mr. McDaniel also alleges the postal service management failed to discuss the issues of the case at "Step 2" of the grievance procedure.  (Complaint ¶¶ 10-15).

---

In contrast, in ruling on a summary judgment motion, the court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party.  In re Morris, 260 F.3d 654, 665 (6th Cir.2001).  As such, Reeves did not announce a new standard of review for summary judgment motions.

To the extent that Mr. McDaniel's claim arguably falls under 39 U.S.C. §

1208(b)of the Postal Reorganization Act, his claim for breach of contract must fail.

Section 1208(b) provides for jurisdiction of the district courts over "suits for violation of

contracts between the Postal Service and a labor organization representing Postal

Service employees...."  This section is the "analogue" of § 301(a) of the Labor

Management Relations Act, 29 U.S.C. § 185(a).  Lawson v. Truck Drivers, Chauffeurs &

Helpers, 698 F.2d 250, 255 (6th Cir.), cert. denied, 464 U.S. 814 (1983).  Section 301

law is therefore consistently applied to actions brought under 39 U.S.C. § 1208(b).  Id.

Under this body of law, it is well established that when a collective bargaining

agreement establishes a mandatory grievance procedure and grants the union the

exclusive right to pursue claims on behalf of an aggrieved employee, as in this case, the

results obtained by the union are normally conclusive of the employee's rights under the

agreement subject to very limited judicial review.  DelCostello v. International

Brotherhood of Teamsters, 462 U.S. 151, 164 (1983).  Accordingly, the aggrieved

employee normally lacks independent standing to attack the results of the grievance

process.  Anderson, 773 F.2d at 882; McNair, 768 F.2d at 735; Vosch v. Werner

Continental, Inc., 734 F.2d 149, 154-55 (3rd Cir. 1984), cert. denied, 469 U.S. 1108

(1985).

An employee, such as Mr. McDaniel may, however, still bring suit under the

collective bargaining agreement, but such suit must establish that the union breached

its duty of fair representation along with the claim against the USPS for breach of

contract.  Bacashihua, 859 F. 2d at 406; DelCostello, 426 U.S. at 164-65, 103 S.Ct.

2290-91.  A hybrid breach of contract/breach of duty of fair representation suit is one in

which the employer is charged with violating the terms of a collective bargaining agreement and the union is charged with breach of the duty of fair representation. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. at 164-65; Dushaw v. Roadway Express, Inc., 66 F.3d 129, 132 (6th Cir. 1995). To prevail in such a hybrid suit, the plaintiff must prove each claim against each defendant. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990); DelCostello, 462 U.S. at 165; White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir. 1990). However, Mr. McDaniel has neither claimed nor attempted to establish a breach of the APWU's duty of fair representation. Accordingly, Mr. McDaniel's breach of contract claim is deficient and this Court will grant the USPS's motion for summary judgment on the plaintiff's claim.

   **E.    Complaint III – Claims of Discrimination and Retaliation with Regard to the Plaintiff's Termination Fail as a Matter of Law.**

   In his third specific Complaint, Mr. McDaniel maintains the decision by the USPS to remove him from service, effective 13 January 2006 was predicated on racial animus as well as on retaliation for prior EEO activity. Mr. McDaniel gives voice to these claims in Agency Case No. 1C-441-0018-06 and in his Complaint filed in Case No. 1:06 CV 1371 and later merged with his preceding Complaint before this Court, Case No. 1:06 CV 803.

   **1.    Discrimination**

   Mr. McDaniel alleges employment discrimination based upon a theory of disparate treatment. In such cases, the Sixth Circuit utilizes a burden-shifting analysis

as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). To establish a prima <u>facie case</u> of discrimination, plaintiff must demonstrate: (1) that he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was treated differently from similarly situated members of the unprotected class. <u>Alexander v. Local 496, Laborers' International Union</u>, 177 F.3d 394, 402-03 (6th Cir. 1999).

The Court finds Mr. McDaniel's claim is defective because he has presented no evidence from which a reasonable jury could infer that he was discriminated against because of his race. That is, Mr. McDaniel has not met the final element of his <u>prima facie</u> case. The burden of presenting a <u>prima facie</u> case of disparate treatment is not a difficult one, see <u>Macy v. Hopkins County Sch. Bd. of Ed.</u>, 484 F.3d 357, 364 (6th Cir. 2007) (stating the court "must examine plaintiff's evidence [at the <u>prima facie</u> stage of a termination case] independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff"), yet Mr. McDaniel must still present sufficient evidence to raise a genuine issue of material fact as to each element of his <u>prima facie</u> case, <u>Id</u>. at 364 n. 4 (<u>quoting</u> <u>Cline v. Catholic Diocese of Toledo</u>, 206 F.3d 651, 661 (6th Cir. 2000)). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." <u>Id</u>. at 365.

With regard to this specific claim, there is no dispute that Mr. McDaniel was a member of a protected class, that he was qualified for the job he held, and that he suffered an adverse employment action.

Yet, Mr. McDaniel must point to evidence that would permit an inference of race-based animus, such as evidence (i) that he was replaced by a person outside his protected class, or (ii) that he was treated differently from a similarly-situated employee outside his protected class for the same or similar conduct.  Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992).  There is nothing in the record that would permit such an inference here.  As the USPS points out, and this Court has determined under the plaintiff's previously considered claims here, Mr. McDaniel has not identified any fellow employee who had a similar disciplinary record yet was treated more favorably.

In any event, even if the plaintiff had established a prima facie case, the USPS points to Mr. McDaniel's disciplinary record and improper, threatening behavior as a legitimate, nondiscriminatory reason for his discharge.  In reaching its conclusion to remove the plaintiff, the USPS provided Mr. McDaniel with a Notice of Proposed Removal on 1 December 2005 and subsequently carried out an investigation in which Mr. McDaniel participated.  That investigation culminated in a Decision Letter on 5 January 2006, removing Mr. McDaniel from service with the USPS.  See Duggan v. Orthopaedic Inst. of Ohio, Inc., 365 F.Supp.2d 853, 861 (N.D. Ohio 2005) ("The determination of whether an employer reasonably relied on the facts before it does not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action"). In the record before the Court, the USPS articulated a legitimate, non-discriminatory reason for Mr. McDaniel's termination.  McDonnell Douglas v. Green, 411 U.S. at 802-03; see also Lautermilch v. Findlay City Sch., 314 F.3d 271, 275-76 (6th Cir.), cert.

denied, 540 U.S. 813 (2003);  Diehl v. Tele-Solutions, Inc., 57 F.3d 482, 483 (6th Cir. 1995).

The USPS having met its burden, the burden shifted to Mr. McDaniel to show that the employer's articulated reasons for removal were a pretext for discrimination. See Allen v. Michigan Dep't of Corrections, 165 F.3d at 409; see also Johnson v. O'Neill, No. 04-3550, 2005 WL 1027554, at *6 (6th Cir. May 3, 2005).  Mr. McDaniel has not presented evidence from which the Court could reasonably conclude that the USPS's articulated basis for terminating the plaintiff's employment could be considered a pretext for unlawful racial discrimination in violation of Title VII.  See McDonell Douglas, 411 U.S. at 802-03; Allen, 165 F.3d at 409.  Accordingly, the USPS is entitled to summary judgment in its favor on Mr. McDaniel's third claim of race discrimination.

### 2.    Retaliation

In this instance, Mr. McDaniel urges the Court to find the USPS action terminating his employment, which began with a Notice of Proposed Removal letter to the plaintiff on 1 December 2005, represented illegitimate retaliatory action for the plaintiff's protected activity in filing past EEO complaints.  As previous, protected activity, Mr. McDaniel identifies a federal court lawsuit filed on April 2005, a federal lawsuit filed in 2004, and EEO settlements that occurred in cases filed in 2004 and 2005.

The USPS maintains they are entitled to summary judgment on Mr. McDaniel's retaliation claim because he cannot establish a prima facie case of retaliation in which the element of causality remains unsatisfied.  The USPS further argues that it had

legitimate, non-retaliatory reasons for all of its actions regarding Mr. McDaniel and that

he cannot establish that such actions are pretextual.  This Court agrees.

Title VII prohibits an employer from retaliating against an employee who "made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  The elements of a prima

facie case of retaliation are:

> (1) that he engaged in activity protected by Title VII; (2) that the defendant
> knew of this exercise of his protected rights; (3) that the defendant
> consequently took an employment action adverse to plaintiff; and (4) that
> there is a causal connection between the protected activity and the
> adverse employment action.

Stouss v. Michigan Dept. of Corrections, 250 F.3d 336, 342 (6th Cir. 2001); see also

Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co., 783 F.2d 50, 54 (6th Cir. 1986) cert.

denied, 478 U.S. 1006 (1986).

In this specific claim, there is no dispute that Mr. McDaniel's discharge amounts

to a materially adverse employment action. However, to show a causal connection, i.e.,

to establish the fourth element of a prima facie case of retaliation, a plaintiff must

adduce sufficient evidence from which an inference can be drawn that the adverse

action would not have been taken if the plaintiff had not engaged in protected activity.

Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir.2000).  There is no one

dispositive factor required to establish a causal connection; however, evidence that

defendant treated the plaintiff differently from similarly situated employees or that the

adverse action was taken shortly after the plaintiff's exercise of protected rights is

relevant to causation.  Id.; Tuttle v. Metro Gov't of Nashville, 474 F.3d 307, 321 (6th Cir.

2007).  Where the time period between the protected activity and the adverse

- 35 -

employment action is less than two months, this may be sufficient.  Asmo v. Keane, Inc., 471 F.3d 588, 593 (6th Cir. 2006).[10]   However, "the mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim."  Balmer, 423 F.3d at 615.

In this instance, the temporal remove of Mr. McDaniel's EEO activity from his discharge proceedings in late 2005, is too great to provide the necessary causality determinations for a prima facie case of retaliation.  While Mr. McDaniel's pro se briefings are replete with opinion evidence that he was terminated due to his prior EEO activity, such bald speculation is insufficient to overcome a motion for summary judgment.  "[T]his circuit has long held that '[m]ere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden' " of demonstrating that there is a genuine issue for trial.  Bell v. Ohio State University, 351 F.3d 240, 253 (6th Cir. 2003) (quoting Bryant v. Commonwealth of Kentucky, 490 F.2d 1273, 1274 (6th Cir. 1974) (per curiam)).

_____

[10]The Court considers that the Sixth Circuit has, in certain circumstances, found that temporal proximity between the protected activity and the hostile work environment may give rise to an inference of a causal connection.  Moon v. Transport Drivers, Inc., 836 F.2d 226, 229 (6th Cir.1987); DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir.2004) (holding that temporal proximity alone (21 days) is sufficient to establish an inference of retaliation); Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir.2004) (holding that temporal proximity alone (3 months) is sufficient to establish an inference of retaliation). The Court, however, notes the recent decision in Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 321(6th Cir.2007), which states that "[t]he law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim."

Assuming, <u>arguendo</u>, that Mr. McDaniel had met his <u>prima facie</u> burden[11] in this instant claim of retaliation, the USPS may rebut the presumption of retaliation from the <u>prima facie</u> case by asserting a legitimate, non-discriminatory reason for its actions. <u>Balmer v. HCA, Inc</u>. 423 F.3d, 606, 614 (6th Cir. 2005).

Even if the Court found Mr. McDaniel had established a <u>prima facie</u> case of retaliation, the Court's analysis would require a consideration of pretext.  As with a claim of discrimination, upon establishing a <u>prima facie</u> case the burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse action." <u>Abbott v. Crown Motor Co., Inc.</u>, 348 F.3d 537, 542 (6th Cir. 2003).  The USPS has met this burden by establishing that Mr. McDaniel was discharged after an investigation affirmed disciplinary issues coupled with unacceptable insubordination that culminated in threatening, physical behavior.

Once the USPS established a legitimate, non-discriminatory reason for his discharge, the burden shifts back to Mr. McDaniel, requiring him to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for a retaliatory animus.  <u>Ibid</u>.  "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee."  <u>Smith v. Chrysler Corp</u>., 155 F.3d 799, 805-06 (6th Cir. 1998).  "In challenging an employer's action, an employee 'must demonstrate that the employer's reasons (each of them, if the reasons

---

[11]"The burden of establishing a <u>prima facie</u> case in a retaliation action is not onerous, but one easily met."  <u>DiCarlo v. Potter</u>, 358 F.3d 408, 419 (6th Cir.2004) (quoting <u>Nguyen</u>, 229 F.3d at 563).

independently caused [the] employer to take the action it did) are not true.' " <u>Id</u>. (<u>quoting</u> <u>Kariotis v. Navistar Int'l Trans. Corp.</u>, 131 F. 3d 672, 676 (7th Cir.1997)).

In examining whether the stated reason is pretext, the Court must determine whether the employer reasonably relied on the particularized facts before it at the time it made the employment decision. <u>Smith</u>, 155 F.3d at 807. The employer is not required to show that it left no stone unturned; rather, the issue is whether the employer made a reasonably informed and considered decision before taking the adverse employment action. <u>Id.</u> The Court should not blindly accept the proffered reason as honest. <u>Id</u>. If the employee adduces evidence establishing that the employer failed to make a reasonably informed and considered decision, then its decisional process is "unworthy of credence," and any reliance by the employer on such a process cannot be deemed "honestly held." <u>Id</u> . at 807-08.

In reviewing the evidence, the Court concludes summary judgment on Mr. McDaniel's retaliation claim is appropriate. The USPS Notice of Proposed Removal letter to Mr. McDaniel on 1 December 2005 formalized a review of the 26 September 2005 physical and verbal confrontation with Mr. Reichbaum which initially resulted in the plaintiff's placement on emergency off-duty status followed by placement on administrative leave. Mr. McDaniel participated in that review, as did Manager Robinson and Supervisor Reichbaum. As indicated by the 5 January 2006 USPS Decision Letter, Mr. McDaniel's actions in the 26 September 2005 incident were found

to violate two sections of the Employee and Labor Relations Manual.[12]  In reaching her

decision, Joyce Shepherd, Manager In-Plant Support, concluded:

> I have fully considered the seriousness of the offense and the relation of
> the offense to your duties and position.  USPS policies regarding violence
> in the workplace are well-known.  I find that the offense was a violation of
> these policies, that it was malicious in nature, and that such conduct
> cannot be tolerated.  I have considered your past work record and years of
> service, however I do not find that they in any way mitigate your conduct in
> this instance.

(McDaniel Decision Letter).  Upon review, the Court determines the USPS exhibited a

reasonably informed and considered decision when it terminated Mr. McDaniel.

Accordingly, the Court will grant the USPS summary judgment on Mr. McDaniel's claim

of retaliation with regard to his termination from the Postal Service.

---

[12]**665.16 Behavior and Personal Habits**
Employees are expected to conduct themselves during and outside of working hours in a
manner that reflects favorably upon the Postal Service.  Although it is not the policy of the
Postal Service to interfere with the private live of employees, it does require that postal
employees be honest, reliable, trustworthy, courteous, and of good character and
reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain
regulations governing the off-duty behavior of postal employees.  Employees must not
engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial
to the Postal Service.  Conviction for a violation of any criminal statute may be grounds for
disciplinary action against an employee, including removal of the employee, in addition to
any other penalty imposed pursuant to statute.  Employees are expected to maintain
harmonious working relationships and not to do anything that would contribute to an
unpleasant working environment.

**665.24 Violent and/or Threatening Behavior**
The Postal Service is committed to the principle that all employees have a basic right to
safe and humane working environment.  In order to ensure this right, it is the unequivocal
policy of the Postal Service that there must be no tolerance of violence or threats of
violence by anyone at any level of the Postal Service.  Similarly, there must be no tolerance
of harassment, intimidation, threats, or bullying by anyone at any level.  Violation of this
policy may result in disciplinary action, including removal from the Postal Service.

Employee and Labor Relations Manual, Section 665.

**Conclusion**

Pursuant to the foregoing facts and analysis, the USPS's motion for summary judgment is granted as to Mr. McDaniel's claims of race and sex discrimination, retaliation, hostile work environment and breach of contract.  (Docs. 13, 14). The Court denies Mr. McDaniel's motions for summary judgment and dismissal as legally insufficient (Docs. 16, 17, 19, 20, 21) and declares moot his motions to strike and to amend (Docs. 19, 22).


IT IS SO ORDERED



_____/s/Lesley Wells_____
UNITED STATES DISTRICT JUDGE